RIVES, J.
The enquiry in this case is whether there has been such a substitution of a new security for an old one that was tainted with usury, as to make it equally void with the old one, and subject it to the same defence. The general principle is a *862 familiar one, and is thus clearly stated in Walker v. Bank of Washington, 3 How. U. S. R. 62: ‘ ‘The mere change of securities for the same usurious loan to the same party who received the usury, or to a person having notice of the usurj', does not purge the original illegal consideration, so as to give a right of action on the new security. Every subsequent security given for a loan originally usurious, however remote or often renewed, is void.” This doctrine, however, does not apply where third persons, strangers in whole or part to the original security, intervene, and for motives peculiar to themselves and unaffected by the usurious consideration, supersede or supplant it by a new obligation of their own creation. To which class we refer the bond which is the subject of this suit? Is it the mere substitution between the same parties of a new bond in the place of one void for usury, and therefore open to the same de-fence? or is it a totally new and different obligation of *third persons, and, though arising out of the original illegal contract, thereby purged of this taint?
Eet it be conceded that the $1,000 bond of R. A. Chandler and R. B. Chandler was void for usury, and formed part or the consideration of the bond in this record and the subject of this suit. Such a concession, I think, is due to the evidence in this cause; but here it is noticeable that the renewed bond is given neither by R. A. Chandler (for he was dead), nor by R. B. Chandler as a principal obligor. On the contrary, R. B. Chandler, the survivor, prevails on strangers to the old bond to lift it by an obligation of their own, on which he goes as security. How can Such an act on the part of R. B. Chandler, one of the original obligors in the old bond, be reasonably construed but as a voluntary waiver on his part of the statute? The statement of the appellees’ counsel, in a written argument that has been laid before us, goes far to favor this construction. We are informed, that of the new obligors, O. M. Chandler was the only son, and Apperson and Cooke were the son-in-law of R. B. Chandler; and that the new transaction was a family arrangement by which the debt was lifted from the aged father, and assumed by those who would be his heirs, and destined soon to succeed to his property and their inheritance. It is, therefore, very much as if R. B. Chandler had paid the debt and then united with his children in borrowing of Drake the monej' thus paid; in which case no one can doubt that the new transaction ■ would be free of usury. The actual contract is closely, and, as it seems to me, purposely, assimilated to this. The recital in the bond is that it was for “this amount borrowed of Robert Drake” by these parties.
This view of this transaction is abundantly sustained by authoritj*. Comyn on the Daw of Usury, p. 186, admits that “where third persons are mixed up with the new ^transaction, the courts regard it with a favorable eye. Thus, where a man makes an usurious -agreement, and gives a bond, and afterwards, by a subsequent argeement, gives a new bond for the sum lent to I S, to whom the lender owes so much, in satisfaction of his debt; this last bond is not voidable under the statute. Reginia v. Seewel, alias Beans, 7 Mod. R. 118. And so, where A, for a usurious consideration, had given his promissory note to B, who transferred it to C for a valuable consideration, without any notice of the usury; and A afterwards gave his bond to C for the amount of the note, the court of King’s Bench held that this bond was not vitated by the original usury to which C was no party. Cuthbert v. Haley, 8 T. R. 390.”
A decision of Ed. Kenyon, Chief Justice, in Hulme v. Turner, 4 Esp. N. P. C. 11, is very pertinent to the case at bar. There, the payee of a note given for a usurious consideration, arrested the maker, and to procure his liberation, a third person joined the maker of the note in another note for the amount of the debt; and the Chief Justice said, “he was clearly of opinion that the consideration of the first note could not be questioned in an action on the second, unless it could be shown that it was a color-abe shift to evade the statute, devised when the money was originally lent and the first note granted.”
The case in our own reports of Stone & Ware v. Smith, 6 Munf. 541, is very similar to the foregoing case. Ware, a debtor of Charles Smith, and an execution creditor of William G. Stone, prevailed on the last, in consideration of forbearance, to procure of his father as principal a bond with security, &c., to 'Charles Smith for Ware’s debt, and in such adjustment to allow Ware fifteen per cent, on Stone’s debt to him. It was held that the defence of usury would not lie against this third party Charles Smith, who knew nothing of the usurious agreement between *Ware & Stone. To the same effect is the ’case of Law’s ex’ors v. Sutherland & als., 5 Gratt. 357. Two friends, at the instance of Sutherland, and for his accommodation, had interchanged notes, and bj' the sale of them raised money for him and remitted the proceeds to him to relieve him of a pressing embarrassment; whereupon Sutherland, to save them harmless, executed a bond to them for the amount of their bonds, and secured the same by a deed of trust. It was held that the bond "and deed aforesaid of Sutherland were unaffected by usury. So, again, in a Connecticut case — Wales v. Webb, 5 Conn. R. 154 — a similar principle was announced. A took the promissory note of B, on a usurious consideration, and afterwards, in pursuance of an agreement between them, B substituted the bond of C, procured from C, in consideration of B’s promising to pay him the amount thereof, which B in fact paid. ,Tt was held that this transaction amounted to a voluntary waiver of the statute by B, and that such bond, executed on a new consideration and with no design in anjr one to evade the statute, *863 was valid. In his opinion in this case, Hosmer, Ch. J., said : ‘ ‘It may be considered an established principle, that whenever a man, whether the surety or a stranger, receives the amount of the usurious note from the debtor that the usury is purged, and that the new note is valid, unless such an arrangement was made with an intent to defeat and defraud the statute.”
This citation of authority bears me out ill the conclusion that this bond of strangers to the old one, stands on a very different footing from a renewal or substitution by R. B. Chandler in character of principal. So far as the old note entered into the consideration of the new, its usurious taint was, in the language of these authorities, purged thereby; and R. B. Chandler, in shifting his position from that of principal to that of security, and substituting new parties to his old obligation, must be taken as waiving for *himself and others the benefit of the statute, so far as it applied to his original agreement. For these reasons, the Circuit Court did not err in sustaining the demurrer to the 2d plea, and in giving judgment for the debt; wherefore the judgment of the District Court must be reversed, and that of the Circuit Court affirmed.
The other judges concurred in the opinion of Rives, J.
Judgment of the District Court reversed.